UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HAYWOOD ANDREWS, )<br>)<br>*Plaintiff*, )<br>)<br>*vs.* )<br>)<br>SECURITAS SECURITY SERVICES USA, INC., )<br>)<br>*Defendant.* ) | 1:10-cv-0889-JMS-TAB |

# **ORDER**

Plaintiff Haywood Andrews filed this action against Defendant Securitas Security Services USA, Inc. ("Securitas"), alleging that Securitas discriminated against him on the basis of his race. Securitas now moves for summary judgment on all of Mr. Andrews' claims. [Dkt. 25.]

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must demonstrate more than a factual disagreement between the parties; it must set forth specific facts showing that there is a "material" issue for trial and cannot rely upon the mere allegations or denials in the pleadings. The materials relied

upon to support an asserted fact or to oppose its existence must be in the form of admissible evidence. Fed. R. Civ. Pro. 56(c); *Celotex*, 477 U.S. at 317; *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). "Conclusory and unresponsive denial[s] made by [a] plaintiff do not serve to raise a genuine issue as to a material fact," *Heck v. Rogers*, 457 F.2d 303, 307 (7th Cir. 1972). The key inquiry is the existence of admissible evidence to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Trials are only needed to resolve disputes about legally important facts. If Mr. Andrews cannot or does not provide admissible evidence sufficient to show an issue of material fact on summary judgment, the Court must grant Securitas' motion and issue judgment in its favor.

## II.
## STATEMENT OF FACTS[1]

Securitas provides uniformed security guard and patrol services for clients, businesses, and organizations in order to provide protection for their employees and property. [Dkt. 27-1 at 1 ¶3.] Security guards are employed by Securitas (not the client) and notified upon hire of the likelihood of being transferred to different sites based on client necessity. [*Id.*]

The Security Officer Handbook proclaims that Securitas is an equal opportunity employer that implements a policy ensuring all personnel actions (i.e., hiring, compensation benefits, demotion, assignment, discipline, etc.) will be administered without regard to race, color, religion, sex, sexual orientation, citizenship, etc. [Dkt. 27-3 at 2.] Securitas expects employees to demonstrate sensitivity and respect for co-workers and asks that they "report any incident that you feel is inappropriate or in violation of Company policy." [Dkt. 27-3 at 2-3.] Securitas also

---

[1] The facts are undisputed unless otherwise noted.

offers a hotline, "AlertLine", for employees to call when experiencing any type of problems, twenty-four hours a day, seven days a week. [Dkt. 27-1 at 1-2 ¶4.] The hotline is operated by a trained communications specialist who records the caller's concerns and routes information to the appropriate contact. [*Id.*] Callers may remain anonymous. [*Id.*]

Mr. Andrews began working as a security guard for Securitas in October 2001 and advanced to several supervisory positions at different locations such as the Children's Museum, Redcats, and Market Tower. [Dkts. 27-1 at 2 ¶5; 27-2 at 6.] In April 2007, Mr. Andrews was demoted from a supervisory position after he failed to handle issues such as officers sleeping and fighting at his location site. [Dkt. 27-4 at 1.] The demotion report also alleged that Mr. Andrews showed a confidential document to another officer, but he denies this allegation. [*Id.*]

Mr. Andrews continued working as a security officer until October 2007, when he received back-to-back promotions to supervisory positions and was appointed Site Supervisor at Redcats. [Dkt. 26 at 4.] Redcats has two site locations: Southeastern and Plainfield. [Dkt. 27-2 at 10.] The Redcats hierarchy was as follows: Mr. Shaw, Mr. Taylor, Mr. Andrews, and then non-managerial employees. [*Id.*] Mr. Taylor was in charge of both Redcats locations but was stationed at Southeastern, while Mr. Andrews was stationed at Plainfield. [*Id.*]

After two weeks at Redcats, Mr. Andrews arranged a meeting with Mr. Taylor to discuss another employee. [Dkt. 27-2 at 11.] At the meeting, Mr. Taylor counseled Mr. Andrews and told him that he had lost the respect of his officers, who no longer wanted to work for him. [*Id.*] Subsequently, Mr. Taylor provided a Counseling and Corrective Action Report ("write-up"), along with a two-page memo listing several complaints received about Mr. Andrews from subordinate officers. [*Id.*]

On March 26, 2008, Mr. Andrews contacted Human Resources to complain of incidents of inappropriate behavior and comments made by Mr. Taylor and Mr. Shaw. [Dkt. 31-1 at 2.] After an investigation, Securitas concluded that the facts did not substantiate the alleged intent to harass but did support that the team's communications were not professional or considerate. [Dkt. 31-2 at 2.] The Human Resources manager made the following assurance to Mr. Andrews, "Securitas has taken remedial steps, through re-structuring, to ensure that your work environment is free from any harassment or possible retaliation." [*Id*.] Mr. Andrew testified in his deposition that after the restructuring, Mr. Taylor and Mr. Shaw were "out of the picture." [Dkt. 37-2 at 17.]

In May 2008, Mr. Peyton was appointed supervisor over both Redcats sites. [Dkt. 27-2 at 19.] Four months later, in September 2008, Mr. Peyton issued Mr. Andrews a written warning, demoted, and removed him from the Redcats site because of "inefficient/substandard performance." [Dkt. 27-7 at 1; Dkt. 27-6 at 3.] After the demotion, Mr. Andrews accepted a security officer position at another site, the Kite Realty Group. [Dkt. 27-2 at 22-23; Dkt. 27-6 at 3.]

On October 14, 2008, Mr. Andrews filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Securitas, alleging that his September 2008 demotion was discriminatory and that Caucasian supervisors had harassed him since he began working at the Redcats site. [Dkt. 29-1 at 1.]

In January 2009 Mr. Andrews filed a second EEOC charge against Securitas alleging that he had learned that several Caucasian employees had been promoted to supervisor positions and those openings had not been made public by the company. [Dkt. 29-2 at 1.] Mr. Andrews alleges that he was unable to apply for supervisor/account manager positions due to his race. [*Id*.]

In June 2010 Mr. Andrews filed a Complaint in the Marion County Superior Court, alleging race discrimination. [Dkt. 12 at 3.] Securitas removed the case to this Court, [dkt. 1 at 1-3], and now seeks summary judgment on Mr. Andrews' claims, [dkt. 25].

### III.
### DISCUSSION

Mr. Andrews claims that Securitas discriminated against him in three instances: 1) he was demoted in September 2008, 2) his supervisors, Mr. Taylor and Mr. Shaw, created a hostile work environment, and 3) Securitas promoted Caucasian employees instead of him after not posting the openings.

Title VII of the Civil Rights Act of 1964 forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)(2)(a). A plaintiff can attempt to prove race discrimination directly or indirectly. To prove a claim directly, he must show that discriminatory conduct was related directly to the employment decision in question. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). To establish a prima facie case using the indirect method, an employee must demonstrate: 1) he belongs to a protected class; 2) his performance met the employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees not in his protected class received more favorable treatment. *Antonetti v. Abbott Laboratories*, 563 F.3d 587, 591 (7th Cir. 2009); *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). If the plaintiff can demonstrate these four elements, the burden "shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Antonetti*, 563 F.3d at 591. If the employer satisfies this burden, the burden shifts back to the plaintiff to estab-

lish that there is an issue of material fact as to whether the employer's proffered reasons are merely pretext for unlawful discrimination or retaliation. *Id.*

### A) September 2008 Demotion

In his Complaint, Mr. Andrews contends that Securitas discriminated against him when it demoted him because of his race in September 2008. [Dkt. 1-2 at 2-3.] Securitas argues that this claim fails because Mr. Andrews admitted in his deposition that the demotion was not because of his race. [Dkt. 26 at 5.] In response, Mr. Andrews directs the Court to his EEOC charge and Complaint and contends that his deposition admissions were not credible because "they were made towards the end of a deposition . . . and [he] works the overnight shift and likely had little sleep before his deposition began." [Dkt. 32 at 3.]

"[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997). A party cannot simply rely on his assertions in his pleadings, instead, summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Admissions are relevant summary judgment evidence. *See, e.g.*, *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000). Deponents are held to admissions of fact made in depositions that, if true, would entitle the moving party to judgment. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) (non-movant cannot defeat summary judgment by designating affidavit contradicting earlier deposition admission that entitled moving party to judgment); *see also Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994) (referring to *Babrocky* as the "controlling case" in the Seventh Circuit on this issue). Additionally, pursuant to Rule 30(e), a

deponent may request a transcript of the deposition to review before signing it.  If he does so, he has 30 days from the time he receives notice that the transcript is available to review it and make changes in form or substance.  If the deponent disagrees with a statement in the deposition, he must make changes and sign a statement listing the changes and the reasons for making them. Fed. R. Civ. Pro. 30(e).

Mr. Andrews directs the Court to vague assertions in his deposition about Securitas employee Jerry Peyton that he argues show his demotion was retaliatory, [dkt. 32 at 3 (citing dkt. 27-2 at 16-17)].  But in doing so, he ignores both the fact that he did not file an EEOC claim for retaliation and the resulting legal conclusion that he cannot assert claims in federal court that were not included in an EEOC charge.  *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002).

Moreover, Mr. Andrews' argument in opposition to Securitas' motion that his 2008 demotion was discriminatory directly contradicts three admissions Mr. Andrews made in his deposition that his demotion was <u>not</u> because of his race.  [*See* dkt. 27-2 at 31 (Mr. Andrews' testimony that "[t]he discrimination, I don't think that was part of my demotion"); dkt. 27-2 at 32 (Securitas counsel: "So we've got the demotion from Redcats, which I think you have since told me you didn't think that was discriminatory?"  Mr. Andrews:  "The demotion?  No."  Securitas counsel:  "'No,' that wasn't discriminatory?"  Mr. Andrews:  "No."); dkt. 27-2 at 32 (Securitas counsel:  "The third [claim] was the demotion, but you said you didn't believe the demotion was discriminatory?" Mr. Andrews:  "I don't think that it was.").]  Mr. Andrews does not dispute that he made these admissions and there is no evidence that he made changes to his deposition testimony pursuant to Rule 30(e).

Mr. Andrews argues that his admissions are not credible because he works the overnight shift and likely had little sleep before his deposition. [Dkt. 32 at 3-4.] Mr. Andrews does not designate any admissible evidence supporting this speculative assertion and his argument directly contradicts his testimony at the beginning of his deposition that he was not impaired and that nothing prevented him from testifying truthfully at the deposition. [Dkt. 33-1 at 3.] Therefore, the Court rejects Mr. Andrews' request to ignore the admissions he made in his deposition.

Because Mr. Andrews himself admitted his demotion was not discriminatory, the Court concludes that Securitas is entitled to summary judgment on the portion of Mr. Andrews' claim based on his September 2008 demotion.

**B) Hostile Work Environment Claim**

Mr. Andrews' second claim concerns the conduct and behavior of Redcats supervisor Mr. Taylor and the alleged harassment Mr. Andrews suffered while working for him. Securitas treats this claim as if it only applies to the 2007 write-up by Mr. Taylor, [dkt. 26 at 8-9], but Mr. Andrews asserts that his claim pertains to a continuous pattern of behavior and discrimination that occurred until March 2008, [dkt. 32 at 2].

Title VII "does not guarantee a happy workplace." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002). Harassment, however, can be a form of workplace discrimination if severe enough. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). For an employee to prevail on a race or national origin-based hostile work environment claim, he must demonstrate that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). In determin-

ing whether conduct is sufficiently severe or pervasive to be actionable, the Court will look at all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002). While attempting to prove these factors, an employee must remember that "[m]ere subjective belief without the backing of hard evidence cannot prove that an action was inspired by [discrimination]." *Id.* at 549.

The question whether there is a basis for employer liability depends on whether the alleged harassment was perpetrated by supervisors or coworkers. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004). Employers are strictly liable for harassment inflicted by supervisors. *Id.* Even if the plaintiff alleges that he was harassed by a supervisor, the Court will grant summary judgment in favor of the employer if the supervisor's conduct "fall[s] short of the kind of conduct that might support a hostile work environment claim" or if the plaintiff fails to put forth facts to establish that the supervisor's conduct was motivated by race. *Vance v. Ball State Univ.*, 2011 U.S. App. LEXIS 11195, *17-*18 (7th Cir. 2011).

Mr. Shaw and Mr. Taylor were Mr. Andrews' supervisors. [Dkt. 27-2 at 10.] Mr. Andrews' Complaint alleges that from the time he was assigned to the manager position at Redcats until approximately March 26, 2008, Mr. Taylor and Mr. Shaw harassed him. [Dkt. 1-2 at 2.] Mr. Andrews filed a formal complaint with Securitas' human resources department on March 26, 2008, and Securitas conducted an investigation. [Dkt. 31-1 at 2.] Mr. Andrews admitted in his deposition that Securitas ultimately restructured his supervisors in response to his complaint. [Dkt. 27-2 at 17 (admitting that in May 2008 as a result of the investigation, Mr. Shaw and Mr. Taylor were "out of the picture"); *see also* dkt. 31-2 at 2 (letter from human resources informing

Mr. Andrews of restructuring).] Mr. Andrews does not allege that any harassment occurred after he contacted Securitas' human resources department. [*See* dkt. 1-2 at 2 (allegation that Mr. Andrews was harassed "until approximately [M]arch 26, 2008").]

Although Mr. Andrews' deposition focused primarily on a 2007 counseling session and subsequent write up with Mr. Taylor, the Court rejects Securitas' argument that he limited his claim to that incident alone in the deposition.[2] Therefore, the Court will analyze Mr. Andrews' claim in light of all incidences he supports with admissible evidence.

To support his claim, Mr. Andrews primarily relies on the allegations in his Complaint and the October 14, 2008 EEOC charge. [Dkt. 32 at 4-5.] While Mr. Andrews cannot rely on bald assertions in his Complaint to create an issue of material fact on summary judgment, *Schacht*, 175 F.3d at 504, the Court will consider the allegations that are admissible in evidence Mr. Andrews made in the EEOC charge because he signed that statement under the penalty of perjury, giving it the same effect as an affidavit, *see Smith v. Rohana*, 2011 U.S. App. LEXIS 14887 *5 (7th Cir. 2011) (signed declaration given same effect as affidavit on summary judgment). The October 2008 EEOC charge alleges that Mr. Taylor and Mr. Shaw harassed Mr. Andrews, encouraged newly hired officers to treat him with disrespect, and encouraged new hires to find some reason they could use to justify removing him from the site. [Dkt. 29-1.] In response to summary judgment, Mr. Andrews also cites his deposition testimony to support two instances of alleged harassment: 1) his allegation that Mr. Taylor harassed him by refusing to teach him

---

[2] To the extent Mr. Andrews did limit his claim to the write-up, however, the Court agrees with Securitas that his claim would be time-barred because that incident occurred on December 7, 2007, [dkt. 27-5 at 1], and Mr. Andrews didn't file his EEOC charge until October 14, 2008—312 days later. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-841 (7th Cir. 2009) (requiring a charge to be filed within 300 days of the incident). Because Securitas is entitled to summary judgment even if Mr. Andrews' claim is not time-barred, the Court will consider Mr. Andrews' allegations that the harassment continued until March 26, 2008.

how to complete necessary paperwork for his job and telling him to "learn it [him]self," [dkt. 32 at 4-5 (citing dkt. 27-2 at 12-14)], and 2) his allegation that when he complained to Mr. Shaw about Mr. Taylor's behavior, Mr. Shaw didn't do anything, [dkt. 32 at 5 (citing dkt. 27-2 at 12)]. The Court will analyze Mr. Andrews' hostile work environment claim based on the incidents for which he provides evidentiary support.

Even though Mr. Andrews' hostile work environment claim against Securitas is based on the alleged conduct of his supervisors, the Court concludes that his claim fails as a matter of law. First, Mr. Andrews does not argue on summary judgment that Mr. Taylor or Mr. Shaw's conduct was based on his race. Although his EEOC charge summarily concludes that he "believe[s] that [he] was discriminated against because of [his] race," [dkt. 29-1], that unsupported, conclusory assertion is not enough to create an issue of material fact on summary judgment and entitles Securitas to summary judgment, *see Vance*, 2011 U.S. App. LEXIS 11195 at \*17-\*18 (affirming summary judgment for an employer where plaintiff did not establish that supervisor's ill will toward plaintiff had anything to do with her race).

Second, even if the Court were to assume that Mr. Taylor and Mr. Shaw's conduct was based on Mr. Andrews' race, the incidents of alleged harassment for which Mr. Andrews cites evidence do not rise to the level of an objectively hostile work environment. Mr. Taylor's refusal to help Mr. Andrews fill out paperwork by directing him to "learn it [him]self" and Mr. Shaw's failure to do anything about it are not sufficiently severe or pervasive conduct to be actionable as a matter of law. With respect to Mr. Andrews' EEOC allegations that Mr. Taylor and Mr. Shaw encouraged new hires to find some reason they could use to justify removing him from the site, the Court finds the evidentiary foundation lacking. Although sworn, these allegations

are deficient in that they fail to establish that Mr. Andrews has personal knowledge of the substance of the allegations.

Even considering all of the allegations, the Court concludes that Mr. Andrews has failed to establish that any discriminatory conduct was frequent, severe, physically threatening or humiliating. *See Peters*, 307 F.3d at 552. Although Mr. Andrews alleges in his response brief that he suffered emotionally, [dkt. 32 at 5], he cites no relevant evidence to support that allegation.[3] At best (or worst), Mr. Taylor's comment to Mr. Andrews to "learn it [him]self" is a mere offensive utterance.

The Court concludes that Mr. Andrews has not presented admissible evidence sufficient to create an issue of material fact regarding an objectively hostile work environment; therefore, the Court grants summary judgment on Securitas' hostile work environment claim.

**C) Failure-to-promote claim**

Mr. Andrews' final claim is that Securitas engaged in racial discrimination when it promoted Caucasian employees to supervisory positions without first posting those jobs, thereby denying Mr. Andrews the opportunity to apply. [Dkt. 29-2 at 1; Dkt. 1-2 at 3 ¶21.]

To make a prima facie case for a failure-to-promote claim, among other things, the plaintiff must present evidence that he was not selected for a position for which he was qualified and that the position was given to a person outside the protected class who was similarly or less qualified than he. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010).

---

[3] Mr. Andrews cites the follow-up letter from the Securitas human resources department, [dkt. 31-2], which does not mention any alleged emotional suffering. Federal Rule of Civil Procedure 56(c)(3) provides that the Court need consider only the cited materials. The Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).

In the January 26, 2009 EEOC charge, Mr. Andrews alleged that he "learned that several white males have been promoted to supervisors by the company" and that those "openings had not been made public." [Dkt. 29-2.] Mr. Andrews cites no other evidence in response to Securitas' summary judgment motion on his failure to promote claim.[4]

Mr. Andrews testified at his deposition that he "didn't know who" was promoted, he just knew that there were no job openings posted for the positions. [Dkt. 27-2 at 26.] It appears that Mr. Andrews is actually more disgruntled that the positions weren't posted than he is with whomever Securitas chose to fill them (since he admitted in his deposition that he didn't know who those people were). This is an interesting position for Mr. Andrews to take, considering that he admitted in his deposition that he had previously been promoted to a job that he doesn't believe Securitas posted. [Dkt. 27-2 at 26; *see also* dkt. 27-2 at 26 (quote from Securitas handbook acknowledging that "from time-to-time management will, when appropriate, fill job openings or make transfers without posting notices").] Even assuming three Caucasian males were promoted to positions for which Mr. Andrews could not apply, Mr. Andrews cites no evidence that those unknown individuals were less qualified than he was. Accordingly, his failure-to-promote claim fails.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Securitas Security Services USA, Inc.'s motion for summary judgment on all of Mr. Andrews' claims. [Dkt. 25.] Final judgment will issue accordingly.

---

[4] Mr. Andrews cites his Complaint but, as detailed above, Mr. Andrews cannot rely on bald assertions in his pleadings to create an issue of material fact on summary judgment. *Schacht*, 175 F.3d at 504. The Court will, however, consider the allegations made in the EEOC charge because Mr. Andrews signed that statement under the penalty of perjury, giving it the same effect as an affidavit. *Smith*, 2011 U.S. App. LEXIS 14887 at *5.

08/17/2011

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Blake J. Burgan
TAFT STETTINIUS & HOLLISTER LLP
bburgan@taftlaw.com

Gregory P. Gadson
LEE COSSELL KUEHN & LOVE LLP
ggadson@nleelaw.com

Cherry Malichi
LEE COSSELL KUEHN & LOVE LLP
cmalichi@nleelaw.com

Hannah Lee Meils
TAFT STETTINIUS & HOLLISTER LLP
hmeils@taftlaw.com